UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X    Index No.:
JAMIE FRIEDERICK,

                                    Plaintiff,
                                                                       **COMPLAINT**

            -against-

PASSFEED, INC., ATTILA SARY, individually, and
RICHARD WANG, individually,                                            Plaintiff Demands a
                                                                       Trial by Jury

                                    Defendants.
-------------------------------------------------------------------X

Plaintiff, by and through her attorneys, Arcé Law Group, P.C., hereby complains of Defendants,

upon information and belief, as follows:


## NATURE OF THE CASE

1.  Plaintiff complains pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C.

    §2000e et seq. ("Title VII"), as well as to remedy violations of the New York State Executive

    Law and the Administrative Code of the City of New York, based upon the supplemental

    jurisdiction of this Court pursuant to *Gibbs*, 383 U.S. 715 (1966) and 28 U.S.C. §1367, seeking

    damages to redress the injuries Plaintiff has suffered as a result of being harassed and

    discriminated against by her employer on the basis of her sex/gender, together with sexual

    harassment, *quid pro quo* sexual harassment, creating a hostile work environment, retaliation,

    and unlawful termination.


## JURISDICTION AND VENUE

2.  The Court has jurisdiction pursuant to 42 U.S.C. 2000e *et seq.*, 28 U.S.C. §1331, §1343, and

    supplemental jurisdiction thereto.

3.  This action involves a Question of Federal Law.

4.  The Court also has jurisdiction over this matter pursuant to 28 U.S.C. §1332 in that there is complete diversity of citizenship, and the matter in controversy exceeds, exclusive of interest and costs, the sum of $75,000.00.

5.  Venue is proper in this district based upon the fact that a substantial part of the events or omissions giving rise to the claim occurred within the Southern District of the State of New York. 28 U.S.C. §1391(b).

6.  On or about August 29, 2019, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").

7.  On or about January 13, 2021, the EEOC issued a final determination that "**there is reasonable cause to believe that [Plaintiff was] … discriminated against … on the basis of sex (sexual harassment) and [was] subjected … to retaliation.**"

8.  On or about January 27, 2021, Plaintiff received a Notice of Right to Sue Letter from the EEOC.

9.  This action is brought within ninety (90) days of said Notice of Right to Sue Letter.

## PARTIES

10. Plaintiff is a female resident of the State of California, County of Nevada.

11. At all times material, Defendant PASSFEED, INC. (hereinafter also referred to as "PASSFEED") was and is a foreign business corporation duly incorporated under the laws of the State of Delaware.

12. At all times material, Defendant PASSFEED was and is a foreign business corporation not authorized to conduct business in the State of New York, but which does conduct business in the State of New York.

13. At all times material, Defendant PASSFEED's principal place of business was and is located at 9 East 53rd Street, 5th Floor, New York, NY 10022.

14. At all times material, Defendant ATILLA SARY (hereinafter also referred to as "SARY") was and is Defendant PASSFEED's "Director of Marketing."

15. At all times material, Defendant SARY was Plaintiff's supervisor and/or had supervisory authority over Plaintiff.

16. At all times material, Defendant SARY was and is a resident of the State of New York.

17. At all times material, Defendant RICHARD WANG (hereinafter also referred to as "WANG") was and is Defendant PASSFEED's "Founder and CEO."

18. At all times material, Defendant WANG was Plaintiff's supervisor and/or had supervisory authority over Plaintiff.

19. At all times material, Defendant WANG was and is a resident of the State of New York.

20. Defendant PASSFEED, Defendant SARY, and Defendant WANG are hereinafter collectively referred to as "Defendants."

21. At all times material, Plaintiff was an employee of Defendants.

## MATERIAL FACTS

22. On or about March 18, 2019, Plaintiff began working for Defendant PASSFEED as a "Merchandise Coordinator" at its 750 Lexington Avenue, 7th Floor, New York, New York 10022 location. As part of Plaintiff's job responsibilities, she was in charge of Defendant PASSFEED's social media accounts.

23. During the first week of her employment, Defendant SARY made unlawful comments towards Plaintiff and asked her a number of inappropriate personal questions.

24. For instance, Defendant SARY asked Plaintiff, "**Are you a lesbian?**" and "**Do you have cats? I figured at your age that if there weren't kids or marriage that there must be a cat in the picture.**" Plaintiff uncomfortably laughed, but did not complain since it was her first week of employment with Defendants.

25. Moreover, during Plaintiff's first week, Defendant SARY regularly offered to buy her lunch. Plaintiff routinely declined Defendant SARY's offer.

26. Similarly, during her first week of employment, Defendant SARY asked Plaintiff, "**What's your sign?**" Plaintiff responded, "I'm a Gemini, but I don't really believe in astrology. I think it's nonsense." Defendant SARY replied, "**No, it's really important. All Gemini's are crazy twins. I got stabbed by an ex-girlfriend who was a Gemini. If I piss you off, are you going to stab me?**" Plaintiff did not respond to Defendant SARY's question.

27. On or about March 26, 2019, Defendant SARY said to Plaintiff, "**I can feel myself doing the wrong thing, but I can't help myself**" and asked Plaintiff to give him her hand. Plaintiff asked, "What are you talking about?" and reluctantly extended her hand. Defendant SARY then **placed a silver necklace in Plaintiff's hand**. Plaintiff did not want to reject the gift outright for fear of retaliation, so she took the necklace with the intention of returning it at a later date.

28. The next morning, in another attempt to facilitate a romantic relationship with her, **Defendant SARY gave Plaintiff a bouquet of red freesias**. Defendant SARY told Plaintiff, "I have something I need to get off my chest. **I feel a spiritual connection with you. I never meet cool women like you. The moment I saw you smile I felt a special connection with you. Look, I know this would never work, unless you have daddy issues.**" Plaintiff responded, "You don't even know me! This is highly inappropriate. I wish you never said or did any of

4

this." Defendant SARY replied, "That was coming from [Defendant SARY], Dennis[1] can work with you. I'm really sorry."

29. Additionally, in an attempt to minimize his inappropriate behavior, Defendant SARY said, "You can still keep the flowers. It's no big deal, they're only from Trader Joe's." Plaintiff replied, "Well then they're for the office, I don't want them." Defendant SARY then became angry and demanded that Plaintiff not throw the flowers away in the office but said, "You can do whatever you want with them at the end of the day." As a result, Plaintiff put the flowers on another desk in the office and threw them out at the end of the day.

30. Later that afternoon, Plaintiff was still uncomfortable from Defendant SARY's sexual advances and told him, "**I am here to work and make money and I will not put up with bad behavior or advances or be office entertainment for you.**" Defendant SARY did not respond.

31. Shortly thereafter, while Defendant SARY was out of the office, Plaintiff returned the silver necklace that he gave her by placing it on his desk. When he returned to the office, Defendant SARY saw the necklace and told Plaintiff, "**Oh, it's like that? It wasn't even new. I thought since you were an artist you could do something with it.**"

32. Despite Plaintiff making it clear that she did not want a romantic relationship with Defendant SARY, he continued to pursue a romantic/sexual relationship with her.

33. For example, Defendant SARY frequently told Plaintiff, "**You look really good today**" and "**I like your heels.**"

34. In or around the beginning of April 2019, Defendant PASSFEED moved its offices to 750 Lexington Avenue, 12th Floor, New York, NY 10022.

---

[1] Defendant SARY goes by "Dennis" in a professional setting.

35. In or around the first week of April 2019, Defendant SARY took Plaintiff and Defendant's "Human Resources Generalist," Taylor Fenner, on a tour of Defendants' new offices. While walking around the new space, Ms. Fenner asked "Is there a pumping room?" Defendant SARY replied, "What is that?" Ms. Fenner explained, "It is a room for new mothers who are breast feeding." Defendant SARY replied, in reference to masturbation, "**Well then we should have a men's milking room too.**"

36. Also, on or about April 7, 2019, despite her request that their relationship remain professional, Defendant SARY text messaged Plaintiff a picture of his dog and wrote, "Get some rest." Plaintiff did not respond to Defendant SARY's text message.

37. On or about April 12, 2019, during a conversation about the nature of Defendant PASSFEED's business, Defendant SARY commented that Defendant PASSFEED "**was like a cold sore or a herpe**." Plaintiff, asked, "What do you mean by that?" Defendant SARY responded, "**You know when you're hooking up with a skeezy person and you are not sure if they have a herpes or a cold sore?**" Plaintiff replied, "No." Defendant SARY asked her, "**Oh, you've never been sexually involved with people like that?**" Plaintiff responded, "No." Defendant SARY then told Plaintiff, "**Oh you're so cute and innocent.**"

38. Additionally, in or around April 2019, on a number of occasions, Defendant SARY asked Plaintiff to spend time with him outside of work. Specifically, over the course of the month, Defendant SARY asked Plaintiff, "**Do you like massages? Want go to the spa?**", "**Want to go to Central Park with a bottle of tequila?**" and "**Want to get mani pedis?**" Plaintiff rejected each invitation.

39. Moreover, on or about April 24, 2019, Defendant SARY text messaged Plaintiff, "Lunch?" Plaintiff did not respond to Defendant SARY's invitation.

6

40. That afternoon, Defendant SARY asked Plaintiff to go to the Metropolitan Museum of Art ("MOMA") with him on April 26, 2019 during work hours.  Defendant SARY said, "**The MOMA is close to the office. We should fake going to a PR meeting and go to the museum instead.  Dress up more than you usually do**."  Plaintiff responded, "I don't know." Defendant SARY became angry and pressured Plaintiff by telling her, "**I want to take advantage of the situation since [Defendant WANG] is out of town**."  Although Plaintiff had no intention of going to the MOMA with Defendant SARY, she told him, "I'll think about it."

41. The next day, on or about April 25, 2019, because it was now clear that Plaintiff had no intention of entering into a romantic or sexual relationship with him, Defendant SARY began retaliating against her.

42. For instance, that morning, Plaintiff presented a work project to Defendant SARY.  However, in retaliation for Plaintiff's rejections of his sexual advances, Defendant SARY refused to look at Plaintiff's work and ignored her throughout the day.

43. That afternoon, Plaintiff text messaged Defendant SARY, "**You are literally one of the most difficult and frustrating people to work with.  So rude and disrespectful.  I will not be going to any phony meeting with you (Defendant SARY's MOMA invitation).  It makes me uncomfortable.  I'm really not sure that I can continue to work here with you when you continue to undermine my work and position**."  Defendant SARY did not respond to Plaintiff's text message.

44. Thereafter, on several occasions, in further retaliation, Defendant SARY routinely yelled at Plaintiff, "**Blow me**," muttered, "**Fuck you**" under his breath at her, and raised his middle finger at her while pretending to scratch his face.

7

45. Additionally, on or about May 28, 2019, Plaintiff, Defendant PASSFEED's "Social Media Coordinator," Kiara Thomas, and "PR Manager," Tatiana Makarevich, met to discuss changes to Defendant PASSFEED's Instagram biography (which was Plaintiff's project).

46. However, in further retaliation, Defendant SARY reassigned Plaintiff's project to "Content Coordinator," Matthew Szulman, while Plaintiff was taking her lunch break.

47. Later that afternoon, Ms. Thomas told Plaintiff, "[Defendant SARY] already changed the bio and told me not to meet with you about it." Because it was part of her job responsibilities, Plaintiff reviewed Defendant PASSFEED's Instagram page and still scheduled a meeting to discuss other ideas to improve it.

48. Yet, Defendant SARY rejected Plaintiff's meeting invitation and told her, "You're not going to change this bio, writing is not your job." However, prior to her rejection of Defendant SARY's advances, Plaintiff regularly wrote copy for Defendant PASSFEED's Instagram page.

49. In or around late May 2019, Defendant SARY shared the password to Defendant PASSFEED's Facebook page with "CEO Assistant," Naoko Zhou. Because Ms. Zhou works out of Defendant PASSFEED's China office, Defendant PASSFEED's Facebook page was disabled when she logged on to it. Likewise, Defendant PASSFEED's mobile application was also disabled because it only operates when Defendant PASSFEED's Facebook page is active.

50. Subsequently, Defendants created an alternate Facebook page so they could get the mobile application working again.

51. A few days later, on or about May 31, 2019, Defendant SARY falsely accused Plaintiff of sharing the password for the alternate Facebook page with someone. Plaintiff explained that she had not shared the password with anyone and knew better than to do that given the issues

they had just experienced.  In response, Defendant SARY yelled, "Now you're making me feel bad" and stormed out of Defendant PASSFEED's office.

52. Later that same day, Defendant SARY returned to the office and saw that the Facebook page and application were again active.  Plaintiff told him, "I fixed [the Facebook page]." Defendant SARY then, in a mocking tone, responded, **"Oh did you?"**

53. That afternoon, Plaintiff emailed Ms. Fenner and wrote, **"I need to make a formal complaint to HR**.  How do I go about doing this?"  Ms. Fenner responded, "Depending on the type.  I have formal forms from New York State for sexual harassment.  I also have a Passfeed form for everything else" and attached the two forms.  Plaintiff replied, **"I'll take both.  No one should have to endure this and I think it would benefit the rest of the team**."

54. On or about June 3, 2019, Plaintiff emailed Ms. Fenner and wrote, "I'm having some health issues and unable to make it to the office today.  Please make note and notify necessary staff." As a result, Plaintiff worked from home.

55. Later that morning, Ms. Thomas text messaged Plaintiff, "Hi [Plaintiff] are you unwell today? Sorry if your (sic) sick!"  Plaintiff text messaged, **"I had a major panic attack this morning. Not good. If there's anything that needs my attention let me know and I'll do it for you. I just can't bring myself to go in there and be a victim to [Defendant SARY].  The stress is making me sick**."  Ms. Thomas replied via text message, **"That's Terrible, yeah this isn't a good environment for you today … I hope you feel better!"**

56. The next day, **a mere four (4) days after Plaintiff emailed HR**, Ms. Zhou emailed Plaintiff's personal email address and attached a termination letter.  In the termination letter, Defendants wrote, "This employment termination letter is to inform you that your employment as Merchandise Coordinator with Passfeed ends as of June 4, 2019.  You have been an

9

outstanding employee and we would like to acknowledge your immense contribution to the company. We wish you all the best."

57. Shortly thereafter, Plaintiff responded to Ms. Zhou's email, writing, "This is very unfortunate news. I love my job at Passfeed and have been working very hard for the company. **This is 100% an unfair dismissal. I have been trying to manage an extreme hostile work environment and ongoing sexual harassment involving [Defendant SARY] whose behavior has caused me not to be able to do my job that I was hired for. Coming into the office and continuing to be subjected to these conditions is unlawful and above what any employee can be asked to do. I have been in contact with Taylor our Human Resources in an attempt to save my job and navigate a solution to my direct supervisor's harassment and inappropriate behavior**." Ms. Zhou did not respond to Plaintiff's email.

58. On or about June 4, 2019, Defendants terminated Plaintiff because of her opposition to their unlawful employment practices.

59. Plaintiff's continued employment, and the benefits, terms, and conditions of such employment, were based on her submission to, and/or refusal of, Defendant SARY's sexual advances.

60. Defendants would not have harassed Plaintiff but for her sex/gender.

61. Defendants would not have retaliated against Plaintiff but for her complaints about Defendant SARY's sexual harassment.

62. As a result of Defendants' actions, Plaintiff felt, and continues to feel, extremely humiliated, degraded, violated, embarrassed, and emotionally distressed.

63. As a result of Defendants' discriminatory and intolerable treatment of Plaintiff, she suffered, and continues to suffer, severe emotional distress and physical ailments.

64. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation which such employment entails, and Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff has further experienced severe emotional and physical distress.

65. As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages.

66. **Defendant WANG, as the owner of Defendant PASSFEED, is individually and personally liable to Plaintiff for discrimination under the New York State and New York City Law as the owner of the Corporate Defendant.**

## AS A FIRST CAUSE OF ACTION
## UNDER TITLE VII
## <u>DISCRIMINATION</u>
## (AS TO DEFENDANT PASSFEED ONLY)

67. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

68. This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e et seq., as amended, for relief based upon the unlawful employment practices of Defendant PASSFEED. Plaintiff complains of Defendant PASSFEED's violation of Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's sex/gender.

69. Defendant PASSFEED engaged in unlawful employment practices prohibited by Title VII by discriminating against Plaintiff on the basis of her sex/gender, together with sexual harassment,

*quid pro quo* sexual harassment, creating a hostile work environment, retaliation, and unlawful termination.

## AS A SECOND CAUSE OF ACTION
## UNDER TITLE VII
## RETALIATION
## (AS TO DEFENDANT PASSFEED ONLY)

70. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

71. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-3(a) provides that it shall be unlawful employment practice for an employer:

> "(1) to . . . discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

72. Defendant PASSFEED engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e et seq. by discriminating against Plaintiff with respect to the terms, conditions or privileges of employment because of her opposition to Defendant PASSFEED's unlawful employment practices.

## AS A THIRD CAUSE OF ACTION
## UNDER STATE LAW
## DISCRIMINATION

73. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

74. Executive Law § 296 provides that "1. It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's ... sex ... to refuse to hire or

12

employ or to bar or to discharge from employment such individual or to discriminate against

such individual in compensation or in terms, conditions or privileges of employment."

75. Defendants engaged in an unlawful discriminatory practice by discriminating against the

Plaintiff because of her sex/gender, together with sexual harassment, *quid pro quo* sexual

harassment, creating a hostile work environment, and unlawful termination.

76. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of

Executive Law Section 296.

## AS A FOURTH CAUSE OF ACTION
## UNDER STATE LAW
## RETALIATION

77. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs

of this Complaint as if more fully set forth herein at length.

78. New York State Executive Law §296(7) provides that it shall be an unlawful discriminatory

practice:

> "For any person engaged in any activity to which this section applies to retaliate or
> discriminate against any person before he has opposed any practices forbidden
> under this article."

79. Defendants engaged in an unlawful and retaliatory discriminatory practice by retaliating, and

otherwise discriminating against Plaintiff because of her opposition to Defendants' unlawful

actions.

## AS A FIFTH CAUSE OF ACTION
## UNDER STATE LAW
## AIDING AND ABETTING

80. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs

of this Complaint as if more fully set forth herein at length.

13

81. New York State Executive Law §296(6) provides that it shall be an unlawful discriminatory practice:

> "For any person to aid, abet, incite compel or coerce the doing of any acts forbidden under this article, or attempt to do so."

82. Defendants engaged in an unlawful discriminatory practice in violation of New York State Executive Law §296(6) by aiding, abetting, inciting, compelling and coercing the discriminatory conduct.

## AS A SIXTH CAUSE OF ACTION
## UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
## DISCRIMINATION

83. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

84. The Administrative Code of City of New York, Title 8, §8-107 [1] provides that "It shall be an unlawful discriminatory practice: (a) For an employer or an employee of agent thereof, because of the actual or perceived … gender … of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.

85. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(1)(a) by creating and maintaining discriminatory working conditions, and otherwise discriminating against the Plaintiff on the basis of sex/gender, together with sexual harassment, *quid pro quo* sexual harassment, creating a hostile work environment, and unlawful termination.

14

## AS A SEVENTH CAUSE OF ACTION
## UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
## <u>RETALIATION</u>

86. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

87. The New York City Administrative Code Title 8-107(7) provides that:

> "It shall be unlawful discriminatory practice for any person engaged in any activity to which this chapter applies to retaliate or discriminate in any manner against any person because such person has (i) opposed any practice forbidden under this chapter, (ii) filed a complaint, testified or assisted in any proceeding under this chapter, (iii) commenced a civil action alleging the commission of an act which would be an unlawful discriminatory practice under this chapter..."

88. Defendants engaged in an unlawful and retaliatory discriminatory practice by retaliating, and otherwise discriminating against Plaintiff, including, but not limited to terminating Plaintiff.

## AS AN EIGHTH CAUSE OF ACTION
## UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
## <u>AIDING & ABETTING</u>

89. Plaintiffs repeat, reiterate, and reallege each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

90. The New York City Administrative Code Title 8-107(6) provides that it shall be an unlawful discriminatory practice, "For any person to aid, abet, incite, compel or coerce the doing of any acts forbidden under this chapter, or attempt to do so."

91. Defendants engaged in an unlawful discriminatory practice by aiding, abetting, inciting, compelling, and coercing the discriminatory conduct.

**WHEREFORE**, Plaintiff respectfully requests a judgment against the Defendants:

A. Declaring that the Defendants engaged in unlawful employment practices prohibited by Title VII, the New York State Executive Law, and the Administrative Code of the City of New York;

15

and that Defendants harassed and discriminated against Plaintiff on the basis of her sex/gender, together with sexual harassment, *quid pro quo* sexual harassment, creating a hostile work environment, retaliation, and unlawful termination;

B.  Awarding damages to the Plaintiff, for all lost wages and benefits, past and future, back pay and front pay and to otherwise make Plaintiff whole for any losses suffered as a result of such unlawful employment practice;

C.  Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to reputation;

D.  Awarding Plaintiff punitive damages;

E.  Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of the action;

F.  Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendants' unlawful employment practices.

### JURY DEMAND

Plaintiff requests a jury trial on all issues to be tried.


**WHEREFORE,** Plaintiff demands judgment against Defendants, jointly and severally, in an amount to be determined at the time of trial plus interest, Punitive Damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

Dated: March 10, 2021
    New York, New York

                                    **Arcé Law Group, P.C.**
                                    *Attorneys for Plaintiff*


                        By: _____
                            Gregory W. Kirschenbaum, Esq.
                            45 Broadway, Suite 430B
                            New York, New York 10006
                            (212) 248-0120


16