UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 03/31/2022

---

JAMIE FRIEDERICK,

　　　　　　　　　　Plaintiff,

　　　　v.

PASSFEED, INC., ATTILA SARY,
*individually*, and RICHARD WANG,
*individually*,

　　　　　　　　　　Defendants.

---

No. 21-CV-2066 (RA)

<u>OPINION & ORDER</u>

RONNIE ABRAMS, United States District Judge:

Plaintiff Jamie Friederick brings this action against her former employer, Defendant Passfeed, Inc., its owner and CEO, Richard Wang, and her former supervisor, Atilla ("Dennis") Sary, alleging sexual harassment, unlawful termination, and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296, and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code Title 8, § 8-107. Now before the Court is Defendants' motion to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

For the reasons that follow, the motion is granted in part and denied in part. Friederick's sexual harassment claims under Title VII as to Passfeed, under the NYSHRL as to Sary, and under the NYCHRL as to Passfeed and Sary, survive, as do her claims for retaliation under Title VII as to Passfeed and under the NYSHRL and NYCHRL as to all three defendants. Plaintiff's NYSHRL sexual harassment claims as to Passfeed, her NYSHRL and NYCHRL sexual harassment claims as to Wang, and her aiding and abetting claims as to all three defendants, however, are dismissed.

## BACKGROUND[1]

Plaintiff Jamie Friederick brings this case against her former employer Passfeed, Richard Wang, and Atilla Sary.  Defendant Passfeed is a business corporation with offices in both New York and China.  Compl. ¶¶ 11–15.  "[W]hen employees in Defendants' New York and China office are aggregated, Defendant Passfeed employed at least fifteen employees."  *Id.* ¶ 22. Defendant Richard Wang is Passfeed's founder, owner, and CEO.  *Id.* ¶¶ 26–27, 96.  Defendant Atilla Sary, who professionally goes by the name "Dennis," is Passfeed's Director of Marketing and was Plaintiff's supervisor.  *Id.* ¶¶ 23–24.

Plaintiff began working for Passfeed on March 18, 2019 as a Merchandise Coordinator in its New York office.  One of her responsibilities was managing Passfeed's social media accounts, including the company's Instagram biography.  As part of her job responsibilities, she drafted social media posts and updates to the company's website and shared them with teammates, including ones in Passfeed's China office.  Other Passfeed employees would review these drafts, and upon final approval, employees in the China office would implement them.

Friederick alleges that during her first week of work, Defendant Sary, her supervisor, began asking her "a number of inappropriate personal questions."  *Id.* ¶ 37.  Specifically, he asked her, "Are you a lesbian?" and "Do you have cats?," adding that he "figured at your age that if there weren't kids or marriage that there must be a cat in the picture."  *Id.* ¶ 38.  Sary regularly offered to buy Friederick lunch, which she continuously declined.  One day he asked her what her astrological sign was, to which she responded, "I'm a Gemini, but I don't really believe in astrology.  I think it's nonsense."  *Id.* ¶ 40.  Sary replied, "No, it's really important.  All Gemini's

---

[1] The following facts are drawn from Plaintiff's First Amended Complaint, Dkt. 14, and are assumed to be true for the purpose of resolving this motion.  *See Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31, 35 (2d Cir. 2017).

are crazy twins.  I got stabbed by an ex-girlfriend who was a Gemini.  If I piss you off, are you going to stab me?" *Id.*

Just over one week into her new job, on March 26, 2019, Sary allegedly told Friederick, "I can feel myself doing the wrong thing, but I can't help myself." *Id.* ¶ 42.  He then asked her to give him her hand.  Plaintiff asked, "What are you talking about?" and "reluctantly extended her hand." *Id.*  Sary then placed a silver necklace into her hand.  Friederick alleges that she did not want to reject it out of fear of retaliation, so she took the necklace with the intention of returning it later.

The next morning, Sary approached Friederick at the office, gave her a bouquet of red freesias, and told her, "I have something I need to get off my chest.  I feel a spiritual connection with you.  I never meet cool women like you.  The moment I saw you smile I felt a special connection with you.  Look, I know this would never work, unless you have daddy issues." *Id.* ¶ 43.  Friederick alleges that she responded, "You don't even know me! This is highly inappropriate. I wish you never said or did any of this," to which Sary replied, "That was coming from [Atilla Sary], Dennis can work with you.  I'm really sorry." *Id.*  Sary also told her to keep the flowers, that it was "no big deal" because "they're only from Trader Joe's." *Id.* ¶ 44.  When Plaintiff responded, "Well then they're for the office, I don't want them," Sary became upset. *Id.*  He demanded that she not throw them away in the office but told her that "You can do whatever you want with them at the end of the day." *Id.*  Friederick left the flowers on another desk in the office and threw them out when the work day ended.  Plaintiff was left feeling "uncomfortable" from Sary's "sexual advances" and told him "I am here to work and make money and I will not put up with bad behavior or advances or be office entertainment for you." *Id.* ¶ 45.  Sary did not respond to this.  She later put the silver necklace that Sary had given her on his desk while he was out of

the office.  When he returned and saw the necklace, he told her "Oh, it's like that?  It wasn't even new.  I thought since you were an artist you could do something with it."  *Id.* ¶ 46.

At this point, Plaintiff felt that she had made "it clear that she did not want a romantic relationship with Sary," but he still "continued to pursue a romantic/sexual relationship with her." *Id.* ¶ 47.  For instance, Sary frequently told Friederick "You look really good today" and "I like your heels."  *Id.* ¶ 48.

In April 2019, Passfeed's New York office moved to a new location.  Sary took both Plaintiff and Taylor Fenner, Passfeed's Human Resources Generalist, on a tour of the new offices. During the tour, Fenner asked "Is there a pumping room?"  *Id.* ¶ 50.  Sary asked what that was, and when Fenner explained that "[i]t is a room for new mothers who are breast feeding," Sary replied, "Well then we should have a men's milking room too."  *Id.*  Plaintiff understood this statement to be a reference to masturbation.  *Id.*

On April 12, 2019, Sary made a comment to Friederick that he believed that Passfeed "was like a cold sore or a herpe."  *Id.* ¶ 54.  When she asked what he meant by that, he responded, "You know when you're hooking up with a skeezy person and you are not sure if they have a herpes or a cold sore?"  When Plaintiff said no, Sary asked her, "Oh, you've never been sexually involved with people like that?"  *Id.*  When she again responded no, Sary said, "Oh you're so cute and innocent."  *Id.*

Throughout the month of April, Sary repeatedly asked to see Plaintiff outside of work, including by asking her: "Do you like massages?  Want to go to the spa?," "Want to go to Central Park with a bottle of tequila?," and "Want to get mani pedis?"  *Id.* ¶ 55.  Plaintiff continuously told him no.

On April 24, Sary texted Friederick "Lunch?" to which she did not respond.[2]  *Id.* ¶ 56. Later that afternoon, he asked her whether she wanted to pretend to have a work meeting on April 26, but instead go with him to a museum during work hours.  Specifically, he told her: "The MOMA is close to the office.  We should fake going to a PR meeting and go to the museum instead.  Dress up more than you usually do."  *Id.* ¶ 57.  When Plaintiff responded that she didn't know about that, he "became angry" and said "I want to take advantage of the situation since [Defendant Wang] is out of town."  *Id.*  While Plaintiff "had no intention of going to the MOMA" with him, she told him that she would think about it.  *Id.*

According to Plaintiff, because at that point it had become clear that she was not interested in having a romantic or sexual relationship with Sary, he began retaliating against her.  On April 25, the day after Sary asked her to go to the MOMA, Plaintiff presented a work project to him. Sary refused to look at it and ignored her throughout the day.  *Id.* ¶ 59.  Later that afternoon, Plaintiff text messaged Sary saying: "You are literally one of the most difficult and frustrating people to work with.  So rude and disrespectful.  I will not be going to any phony meeting with you.  It makes me uncomfortable.  I'm really not sure that I can continue to work here with you when you continue to undermine my work and position."  *Id.* ¶ 60.  Sary did not respond to this text message.

Thereafter, Plaintiff alleges that Sary "routinely yelled" "Blow me" at her.  *Id.* ¶ 61.  He also muttered "Fuck you" under his breath at her, and "raised his middle finger at her while pretending to scratch his face."  *Id.*

---

[2] Sary argues that the text messages provided by Friederick as exhibits to her opposition brief are "not complete."  Sary Letter dated July 6, 2021, Dkt. 27.  The Court, however, will not rely on the exhibits Friederick attached to her opposition in considering this motion to dismiss, but rather accepts as true all factual allegations in the complaint.  *See Stadnick*, 861 F.3d at 35.

On May 28, 2019, Friederick had a meeting scheduled with several Passfeed employees to discuss one of her projects involving changes to Passfeed's Instagram biography.  While she was out on her lunch break, however, Sary reassigned the project to another Passfeed employee.  Later that afternoon, Kiara Thomas, Passfeed's Social Media Coordinator, told Plaintiff that Sary "already changed the bio and told me not to meet with you about it."  *Id.* ¶ 64.  Still believing it to be part of her job responsibilities, Plaintiff scheduled a follow up meeting to discuss the Instagram page.  Sary, however, rejected the meeting invitation and told Plaintiff that "You're not going to change this bio, writing is not your job."  *Id.* ¶ 65.  Up until this point, however, Plaintiff alleges that she routinely wrote content for Passfeed's Instagram page.

Later that same day, Defendant Wang, Passfeed's owner and CEO, added Plaintiff to a WhatsApp group text message called "Passfeed Family," comprised of forty-nine members.  Many of these members had Chinese telephone numbers.  *Id.* ¶ 66.  Around this time, Sary sent the password to Passfeed's Facebook page to Naoko Zhou, Wang's assistant working out of the China office.  When Zhou tried to log into the account, both the Facebook webpage and mobile application were disabled.  Passfeed then created an alternate Facebook page.  On May 31, Plaintiff alleges that Sary wrongfully accused her of sharing the password for the new Facebook page.  When she explained that she had not done so, he yelled "Now you're making me feel bad" and "stormed out" of the office.  *Id.* ¶ 72.  Plaintiff then fixed the Facebook page so that it became active once more.  When she told this to Sary, he responded "in a mocking tone," "Oh did you?"  *Id.* ¶ 73.

That afternoon, Plaintiff emailed Fenner in Human Resources writing "I need to make a formal complaint to HR.  How do I go about doing this?"  *Id.* ¶ 74.  Fenner responded that depending on the type of harassment, she had "formal forms from New York state for sexual

harassment" and she also had a "Passfeed form for everything else." *Id.* Friederick responded that she would take both forms, adding that "[n]o one should have to endure this and I think it would benefit the rest of the team." *Id.*

Three days later, on June 3, 2019, Plaintiff wrote to Fenner letting her know that she was experiencing "some health issues" and would have to work from home that day. *Id.* ¶ 76. Thomas, Passfeed's Social Media Coordinator, texted Plaintiff asking whether she was unwell. Plaintiff responded by writing "I had a major panic attack this morning. Not good. If there's anything that needs my attention let me know and I'll do it for you. I just can't bring myself to go in there and be a victim to [Sary]. The stress is making me sick." *Id.* ¶ 77. Thomas responded to the text, saying "That's Terrible, yeah this isn't a good environment for you today . . . I hope you feel better!" *Id.*

The following day, June 4, 2019, Zhou, Wang's assistant, emailed Plaintiff a termination letter, which read: "This employment termination letter is to inform you that your employment as Merchandise Coordinator with Passfeed ends as of June 4, 2019. You have been an outstanding employee and we would like to acknowledge your immense contribution to the company. We wish you all the best." *Id.* ¶ 78. Friederick alleges that Wang "instructed Zhou to terminate [her]." *Id.* ¶ 80. The termination letter was sent to Friederick just four days after she reached out to HR about making a formal complaint.

Friederick alleges that she replied to Zhou's email, copying Wang, saying:

> This is very unfortunate news. I love my job at Passfeed and have been working very hard for the company. This is 100% an unfair dismissal. I have been trying to manage an extreme hostile work environment and ongoing sexual harassment involving [Sary] whose behavior has caused me not to be able to do my job that I was hired for. Coming into the office and continuing to be subjected to these conditions is unlawful and above what any employee can be asked to do. I have been in contact with Taylor our Human Resources in an attempt to save my job and

navigate a solution to my direct supervisor's harassment and inappropriate behavior.

*Id.* ¶ 79.  Neither Zhou nor Wang responded to Plaintiff's email.  On June 5, 2019, one day after Friederick was terminated, Wang removed her from the Passfeed Family WhatsApp group message.

After timely filing a complaint with the Equal Employment Opportunity Commission alleging discrimination and retaliation, Plaintiff filed this action on March 10, 2021.  She amended her complaint on May 14, 2021, asserting discrimination by Passfeed in violation of Title VII based on her sex/gender by means of *quid pro quo* sexual harassment, hostile work environment sexual harassment and unlawful termination, as well as retaliation for opposing the alleged discrimination.  Dkt. 14.  She also alleges discrimination and retaliation under both the NYSHRL and the NYCHRL against all three Defendants, asserting both direct and aider and abettor liability. N.Y. Exec. Law § 296; N.Y.C. Admin. Code Title 8, § 8-107.

On May 22, 2021, Defendants Passfeed and Wang moved to dismiss on the grounds that Passfeed does not meet the minimum employee requirement to be liable under Title VII, that Plaintiff's complaint fails to state a claim for sexual harassment or retaliation under Title VII, and that her state and city discrimination, retaliation, and aiding and abetting claims likewise fail.  On May 28, 2021, the Court granted Sary's request to join the other Defendants' motion to dismiss and memorandum of law in support.  Plaintiff filed her brief in opposition on June 22, 2021, and Passfeed and Wang replied on July 3, 2021.  Sary submitted a supplemental letter on July 10, 2021 as his reply.

**LEGAL STANDARD**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).[3]  On a motion to dismiss, the Court must "accept[] all factual allegations as true, but 'giv[e] no effect to legal conclusions couched as factual allegations.'" *Stadnick*, 861 F.3d at 35.  To survive a motion to dismiss in the employment discrimination context, a complaint need not "contain specific facts establishing a prima facie case of discrimination under the [*McDonnell Douglas*] framework." *Twombly*, 550 U.S. at 569.[4] "Nevertheless, the elements of a *prima facie* case provide an outline of what is necessary to render [a plaintiff's employment discrimination] claims for relief plausible." *McHenry v. Fox News Network, LLC*, 510 F. Supp. 3d 51, 67 n.6 (S.D.N.Y. 2020).

**DISCUSSION**

**I.    Gender Discrimination Under Title VII, the NYSHRL, and the NYCHRL**

Title VII and the NYSHRL make it unlawful for an employer to discriminate against any individual based on that person's sex.[5]  42 U.S.C. § 2000e-2(a)(1); N.Y. Exec. Law § 296 ("It shall

---

[3] Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

[4] Under the burden-shifting framework of *McDonnell Douglas*, the plaintiff first bears the burden of establishing a prima facie case of discrimination or retaliation. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *see also Patterson v. Cty. of Oneida*, 375 F.3d 206, 221 (2d Cir. 2004).  If a plaintiff meets her burden in establishing a prima facie case, the defendants must then articulate a "legitimate, nondiscriminatory reason" for the adverse employment action. *McDonnell Douglas*, 411 U.S. at 802.  A plaintiff must then show that the employer's explanation was simply a pretext for discrimination. *Cifra v. G.E. Co.*, 252 F.3d 205, 216 (2d Cir. 2001).

[5] As an initial matter, Defendants argue that Passfeed does not have the requisite number of employees to meet the minimum requirements under Title VII.  To be subject to Title VII, a defendant must employ at least fifteen employees.  42 U.S.C. § 2000e(b) (defining "employer" to include only those having "fifteen or more employees").  Defendants argue, without support, that Passfeed's New York company is a separate company from the office in China.  *See* Defs.' Br. at 9.

The Court finds that Plaintiff has plausibly alleged that the New York and China offices were two separate offices of the same company.  Accepting her allegations as true, when one combines the employees in Passfeed's New York and China offices, the company has at least fifteen employees. Compl. ¶ 22; *see also id.* ¶¶ 14–22, 32–26, 41,

be an unlawful discriminatory practice . . . [f]or an employer . . . because of an individual's sex . . . to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."). The NYCHRL likewise prohibits gender discrimination in the workplace. N.Y. Admin. Code, Title 8, § 8-107 ("It shall be an unlawful discriminatory practice . . . [f]or an employer or an employee . . . because of the . . . gender . . . of any person, . . . to discriminate against such person . . . in terms, conditions or privileges of employment.").

Plaintiff alleges that Defendants discriminated against her on the basis of her gender by subjecting her to sexual harassment through the creation of a hostile work environment and *quid pro quo* discrimination, as well as by wrongfully terminating her.[6] In particular, Friederick claims that she was subjected to both hostile work environment and *quid pro quo* sexual harassment during her time at Passfeed, that Passfeed is liable under federal, state, and city law, and that Wang and Sary are liable under state and city law. For the reasons that follow, the Court finds that Friederick states a claim for sexual harassment based on a hostile work environment and *quid pro quo* harassment under Title VII as to Passfeed, under the NYSHRL as to Sary, and under the NYCHRL as to Passfeed and Sary.

---

51, 52, 66–70, 78, 84–87. While Defendants' calculation of its employees includes nine in New York and five in China, Plaintiff correctly notes that this count does not include Defendant Wang, nor does it include Kiara Thomas, another individual Plaintiff alleges was her colleague at Passfeed. The Court thus concludes that, once combined— even without considering the 49 individuals in the WhatsApp Passfeed Family message thread—Plaintiff has plausibly alleged that Passfeed employs the requisite minimum number of employees to be held liable under Title VII.

[6] The Court interprets Plaintiff's unlawful termination claim as a claim for retaliatory firing, which, for the reasons explained below, survives Defendants' motion to dismiss.

A.      **Hostile Work Environment**

1.      **Legal Standard**

Pursuant to Title VII and the NYSHRL, to state a claim of discrimination through the creation of a hostile work environment, a plaintiff must plausibly allege that "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Littlejohn v. City of New York*, 795 F.3d 297, 320–21 (2d Cir. 2015) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)); *see also Summa v. Hofstra Univ.*, 708 F.3d 115, 123–24 (2d Cir. 2013) ("Hostile work environment claims under both Title VII and the NYSHRL are governed by the same standard."). This standard has both objective and subjective components: "the conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive." *Littlejohn*, 795 F.3d at 321. The NYCHRL standard for establishing a hostile work environment is similar but "more permissive, omitting the requirement that the complained-of conduct be severe or pervasive." *Moazzaz v. MetLife, Inc.*, No. 19-CV-10531 (JPO), 2021 WL 827648, at *8 (S.D.N.Y. Mar. 4, 2021).

2.      **Application**

Plaintiff has plausibly alleged that she was subjected to a hostile work environment under all three statutes. Assuming her allegations to be true, Friederick experienced nearly constant harassment from her supervisor Sary over the course of the several months that she worked at Passfeed. Sary's inappropriate behavior began during Friederick's first week of work when he asked her whether she was a lesbian, made a comment about her marital status, and asked her if she was going to stab him like his ex-girlfriend. He wrote to her saying he could "feel [him]self

doing the wrong thing, but [he couldn't] help [him]self" before gifting her a necklace.  Compl. ¶ 42.  Sary gave her flowers, telling her that he felt a "spiritual" and "special connection" with her, adding that he "kn[e]w this would never work, unless [Plaintiff had] daddy issues."  *Id.* ¶ 43.  He repeatedly commented on her appearance.  Sary also made a remark Friederick took to be a reference to masturbation.  *Id.* ¶ 50.

Although Friederick kept refusing his advances and asking him to stop, Sary persisted.  He nonetheless continued to make inappropriate comments, including asking her about people she had been sexually involved with and remarked that she was "so cute and innocent."  *Id.* ¶ 54.  He consistently asked to buy her lunch, which she consistently refused.  He invited her to go on outings outside of the office, including to a spa, to "Central Park with a bottle of tequila," and to get "mani pedis."  *Id.* ¶ 55.  Sary asked Friederick to "dress up more than [she] usually" did to join him in going to a museum during work hours, pretending to be on a fake meeting.  *Id.* ¶ 57.  And finally, he "routinely yelled" "Blow me" and muttered "Fuck you" under his breath at her.  *Id.* ¶ 61.

Friederick has thus alleged that her workplace was permeated with discrimination that was "sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment."  *Littlejohn*, 795 F.3d at 320–21.  Friederick subjectively perceived this environment to be abusive: she repeatedly expressed how uncomfortable Sary's behavior made her, causing her to eventually have to work from home because the stress of "be[ing] a victim to [Sary]" was "making [her] sick," Compl. ¶ 77, and she ultimately sought to file formal complaints against him.  Friederick has also adequately alleged that this was an objectively hostile working environment, because a reasonable person would find this constant and unabating behavior to be abusive.  Sary's persistent campaign of trying to get Friederick to go on dates with him, along with

his repeated inappropriate sexual comments and unwanted gifting of jewelry and flowers, was sufficiently pervasive to have created an abusive environment.

Because Friederick has adequately alleged a claim of discrimination through the creation of a hostile work environment under Title VII and the NYSHRL, the "more permissive" NYCHRL standard is also satisfied. *Moazzaz*, 2021 WL 827648, at *8.

### B.   *Quid Pro Quo* Sexual Harassment

The Court next turns to whether Plaintiff has stated a claim for *quid pro quo* sexual harassment before assessing each defendant's liability for the alleged sexual harassment.

### 1.   Legal Standard

*Quid pro quo* sexual harassment "refers to situations in which 'submission to or rejection of [unwelcome sexual] conduct by an individual is used as the basis for employment decisions affecting such individual." *Perks v. Town of Huntington*, 251 F. Supp. 2d 1143, 1154 (E.D.N.Y. 2003).

To establish *quid pro quo* harassment under Title VII and the NYSHRL, "it is enough to show that the supervisor used the employee's acceptance or rejection of his advances as the basis for a decision affecting the compensation, terms, conditions or privileges of the employee's job.'" *Id.* at 1154–55 (quoting *Karibian v. Columbia Univ.*, 14 F.3d 773, 777–78 (2d Cir. 1994)); *see also Cooper v. N.Y. State Dep't of Labor*, 819 F.3d 678, 680 n.3 (2d Cir. 2016) ("Employment discrimination claims brought under the NYSHRL are analyzed identically to claims under . . . Title VII."); *Figueroa v. RSquared NY, Inc.*, 89 F. Supp. 3d 484, 489 (E.D.N.Y. 2015) (applying Title VII standard for *quid pro quo* harassment to claim brought under the NYSHRL). "Accordingly, to establish a *prima facie* case of *quid pro quo* harassment, a plaintiff must present evidence that she was subject to unwelcome sexual conduct, and that her reaction to that conduct

was then used as the basis for decisions affecting the compensation, terms, conditions or privileges of her employment." *Karibian*, 14 F.3d at 777.

The NYCHRL "does not distinguish *quid pro quo* claims from hostile work environment ones, focusing instead on 'unequal treatment based on gender.'" *Villatla v. JS Barkats, P.L.L.C.*, No. 16-CV-2772 (RA) (RWL) 2021 WL 2458699, at *10 (S.D.N.Y. Apr. 16, 2021), *R. & R. adopted sub nom.* 2021 WL 2458023 (June 16, 2021). "Nonetheless, a *quid pro quo* claim is actionable under the NYCHRL as long as the plaintiff has received unequal treatment based on her gender." *Id.* Allegations that a plaintiff "was treated less well because of a discriminatory intent" is sufficient to establish discrimination under the NYCHRL. *MacAlister v. Millenium Hotels & Resorts*, No. 17-cv-6189, 2018 WL 5886440, at *8 (S.D.N.Y. Nov. 8, 2018) (quoting *Workneh v. Super Shuttle Int'l, Inc.*, No. 15-CV-3521 (ER), 2016 WL 5793744, at *9 (S.D.N.Y. Sept. 30, 2016)).

## 2.    Application

Plaintiff has plausibly alleged a claim of discrimination based on *quid pro quo* sexual harassment under Title VII and the NYSHRL because she has adequately pled that Sary, her supervisor, used her "rejection of his advances as the basis for a decision affecting the compensation, terms, conditions or privileges of [her] job." *Perks*, 251 F. Supp. 2d at 1155.

Friederick has detailed Sary's many unwelcome advances, which she repeatedly refused. Once it became clear that she was not interested in him, he took several actions which—drawing all reasonable inferences in Plaintiff's favor, as the Court must at this stage—support a claim that he was making decisions about her work based on her rejection of him. For example, the day after Friederick did not accept Sary's invitation to go to the museum with him, he allegedly refused to look at a work project that she presented to him and ignored her for the remainder of the day. He

later reassigned one of her writing assignments to another Passfeed employee while she was out to lunch, telling her that "writing is not [her] job," despite Plaintiff's assertion that she routinely wrote content for Passfeed.  Compl. ¶ 65.  At this stage, it is plausible to infer that Friederick's rejection of Sary formed the basis for decisions that affected the terms of her job at Passfeed— specifically the change in her job responsibilities and his refusal to review her work.  Because Plaintiff has sufficiently alleged that some aspects of her job were conditioned on her response to her supervisor's unwelcome advances, the Court finds that she has stated a claim of *quid pro quo* discrimination under Title VII and the NYSHRL.

These facts also support a claim of discrimination under the NYCHRL because Sary's behavior toward her following her rejection of him shows that Friederick "was treated less well because of a discriminatory intent."  *MacAlister*, 2018 WL 5886440, at *8.

### C.    Each Defendant's Liability for Sexual Harassment

Having determined that Plaintiff has stated a claim for both hostile work environment and *quid pro quo* sexual harassment, the Court now addresses which of the defendants may be held liable under which of the relevant statutes.

### 1.    Passfeed's Liability for Sexual Harassment

Friederick alleges that Passfeed is liable for sexual harassment under Title VII, the NYSHRL, and the NYCHRL.  Title VII imposes strict liability on an employer for *quid pro quo* harassment.  *Karibian*, 14 F.3d at 777.  Additionally, absent a specific affirmative defense, an employer is vicariously liable under Title VII for a supervisor's creation of a hostile work environment, even without a showing of the employer's negligence or other wrongdoing. *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998).

Under the NYSHRL, liability for an employee's discriminatory acts may not be imputed to an employer "unless the employer became a party to it by encouraging, condoning, or approving it." *Forrest v. Jewish Guild for the Blind*, 819 N.E.2d 998, 1011 (N.Y. 2004) (quoting *Matter of State Div. of Human Rights v. St. Elizabeth's Hosp.*, 487 N.E.2d 268, 269 (N.Y. 1985)). "Condonation, which may sufficiently implicate an employer in the discriminatory acts of its employee to constitute a basis for employer liability under the [state] Human Rights Law, contemplates a knowing, after-the-fact forgiveness or acceptance of an offense.  An employer's calculated inaction in response to discriminatory conduct may, as readily as affirmative conduct, indicate condonation." *St. Elizabeth's Hosp.*, 487 N.E.2d at 269.

Under the NYCHRL, a court may only impute an employee's harassing conduct to an employer (1) "where the offending employee 'exercised managerial or supervisory responsibility'" over the victim; (2) "where the employer knew of the offending employee's unlawful discriminatory conduct and acquiesced in it or failed to take 'immediate and appropriate corrective action'"; or (3) "where the employer 'should have known' of the offending employee's unlawful discriminatory conduct yet 'failed to exercise reasonable diligence to prevent [it].'" *Zakrzewska v. New Sch.*, 928 N.E.3d 1035, 1039 (N.Y. 2010) (quoting N.Y.C. Admin. Code § 8107(13)(b)(1)–(3)).

Because Plaintiff has plausibly alleged that Sary was her supervisor at Passfeed, Compl. ¶ 24, she has stated a claim against Passfeed for sexual harassment based both on hostile work environment and *quid pro quo* theories under Title VII and the NYCHRL.  *See Burlington Indus., Inc.*, 524 U.S. at 765; *Zakrzewska*, 928 N.E.3d at 1039.

Plaintiff, however, has not alleged sufficient facts to hold Passfeed liable under the NYSHRL for sexual harassment.  In particular, Friederick has not alleged facts establishing that

Passfeed "encouraged," "condoned," or "approved" of Sary's inappropriate behavior toward her. *See Forrest*, 819 N.E.2d at 1011.  Beyond Sary's statement about the "men's milking room," which he made in front of Fenner as well, it is not clear that any of Friederick's co-workers at Passfeed were aware of Sary's behavior toward her until she reached out to HR on May 31 and texted Thomas on June 3.  Although the comments she made on those dates are clearly relevant to, and persuasive as to, her retaliation claim—including that she "just can't bring [her]self to go in there and be a victim to [Sary]," Compl. ¶ 77—Plaintiff has not alleged sufficient evidence to establish that Passfeed had prior knowledge of the sexual harassment and behaved in a way that amounts to a "calculated inaction" indicating condonation of it.  *St. Elizabeth's Hosp.*, 487 N.E.2d at 269.

### 2.    Individual Liability under the NYSHRL and the NYCHRL

Plaintiff next alleges that Defendants Wang and Sary are each individually liable for sexual harassment under the NYSHRL and the NYCHRL.[7]  In assessing claims of discrimination under the NYSHRL, direct individual liability is "limited to individuals with ownership interest or supervisors, who themselves[ ] have the authority to hire and fire employees." *Malena v. Victoria's Secret Direct, LLC*, 886 F. Supp. 2d 349, 365–66 (S.D.N.Y. 2012).  "A supervisor," however, "is an employer for purposes of establishing liability under the NYSHRL if that supervisor actually participates in the conduct giving rise to the discrimination." *Feingold v. New York*, 366 F.3d 138, 157 (2d Cir. 2004); *see also McHenry*, 510 F. Supp. 3d at 73 ("[A]s the Second Circuit has held, 'a co-worker who actually participates in the conduct giving rise to a discrimination claim [can] be held liable under the NYSHRL [or NYCHRL] even though that co-worker lacked the authority to either hire or fire the plaintiff.'") (citing *Feingold*, 366 F.3d at 157) (alteration in original).

---

[7] Individual supervisors and co-workers are not liable under Title VII.  *See Raspardo v. Carlone*, 770 F.3d 97, 113 (2d Cir. 2014).

The NYCHRL provides an even broader basis for direct individual liability than does the NYSHRL, in that it "provides for individual liability of an employee 'regardless of ownership or decisionmaking power." *Malena*, 886 F. Supp. 2d at 366 (quoting *Banks v. Corr. Servs. Corp.*, 475 F. Supp. 2d 189, 200 (E.D.N.Y. 2007)); *see also Kraiem v. JonesTrading Institutional Servs., LLC*, 492 F. Supp. 3d 184, 195 (S.D.N.Y. May 26, 2021).

Under both the NYSHRL and the NYCHRL, though, "individual liability . . . is limited to cases where an individual defendant . . . actually participates in the conduct giving rise to the plaintiff's [discrimination or] retaliation claim." *Malena*, 886 F. Supp. 2d at 366.  In instances where a person is not directly liable for violating the NYSHRL, that person may still be liable if he is found to have "aid[ed], abet[ted], incite[d], compel[led] or coerce[d] the doing of any of the acts forbidden under this [provision], or to attempt[ed] to do so." N.Y. Exec. Law § 296(6).  The same is true for the NYCHRL.  *See Schanfield v. Sojitz Corp. of Am.*, 663 F. Supp. 2d 305, 344 (S.D.N.Y. 2009) ("A claim for aider and abettor liability is also cognizable under the NYCHRL and is susceptible to the same standard as under the NYSHRL, as language of the two laws is virtually identical.").

Although the Second Circuit has found individual defendants liable under the NYSHRL even where their own conduct created the hostile work environment that they were alleged to have aided and abetted, *see Tomka v. Seiler Corp.*, 66 F.3d 1295, 1317 (2d Cir. 1995), *abrogated on other grounds by Burlington Indus. Inc.*, 524 U.S. at 753, several courts since *Tomka*, including New York appellate courts, have held that "[a]n individual may not be held liable . . . merely for aiding and abetting his own discriminatory conduct but only for assisting another party in violating the NY[S]HRL." *Virola v. XO Commc'ns, Inc.*, No. 05-CV-5056 (JG) (RER), 2008 WL 1766601, at *20 (E.D.N.Y. Apr. 15, 2008); *Malena*, 886 F. Supp. 2d at 367 (same); *Strauss v. New York*

*State Dep't of Educ.*, 26 A.D.3d 67, 73 (N.Y. App. Div. 2005) ("[W]e hold that individuals cannot be held liable under Executive Law § 296(6) for aiding and abetting their own violations of the Human Rights Law."); *see also Eckhart v. Fox News Network, LLC*, 20-CV-5593 (RA), 2021 WL 4124616, at \*17 (S.D.N.Y. Sept. 9, 2021).

### a.  Sary's Liability for Sexual Harassment

Plaintiff's sexual harassment claims against Sary survive.  Plaintiff has plausibly alleged that Sary is directly liable for discrimination under both the NYSHRL and the NYCHRL because, as her supervisor who "actually participate[d] in the conduct giving rise to the discrimination," he constitutes an employer for liability purposes.  *Feingold*, 366 F.3d at 157; *see also Malena*, 886 F. Supp. 2d at 366.[8]

### b.  Wang's Liability for Sexual Harassment

Plaintiff's claims against Wang for sexual harassment under the NYSHRL and the NYCHRL are, by contrast, dismissed.  While Plaintiff has plausibly alleged that Wang is an owner of Passfeed, Compl. ¶¶ 26, 96, she has asserted no facts to suggest that he "actually participate[d]" in the sexually harassing conduct.  *Malena*, 886 F. Supp. 2d at 366.

Plaintiff also has not adequately alleged that Wang is liable for aiding and abetting Sary's sexual harassment of her.  The complaint does not plead facts giving rise to the inference that Wang was ever aware of how Sary was treating Friederick, or that he encouraged or attempted to coerce him into treating her inappropriately.

---

[8] Because Sary may be held directly liable for violating both the NYSHRL and the NYCHRL, the Court need not address Plaintiff's claims that he is liable under these laws as an aider and abettor.  *See Eckhart*, 2021 WL 4124616, at \*17 n.10; *cf. Hughes v. Twenty-First Century Fox, Inc.*, 304 F. Supp. 3d 429, 450–51 (S.D.N.Y. 2018) (assessing plaintiff's aiding and abetting claims against only those defendants against whom direct liability could not be imposed).

The Court thus finds that Plaintiff has not sufficiently stated an individual claim against Wang for discrimination based on sexual harassment under either the NYSHRL or the NYCHRL.

## II.      Retaliation Under Title VII, the NYSHRL, and the NYCHRL

Plaintiff further alleges that she was retaliated against in violation of Title VII, the NYSHRL, and the NYCHRL, that Passfeed is liable under all three statutes, and that Wang and Sary are individually liable under the state and city anti-discrimination laws.  For the reasons that follow, the Court finds that Friederick states a claim for retaliation under Title VII as to Defendant Passfeed, and under the NYSHRL and NYCHRL as to all three defendants.

As with Plaintiff's sexual harassment claims discussed above, the Court first addresses whether she has stated a claim for retaliation under each of the statutes and then assesses each defendant's liability in turn.

### A.      Legal Standard

Title VII, the NYSHRL, and the NYSCHRL all prohibit retaliating against someone because they have opposed a forbidden discriminatory practice.  42 U.S.C. § 2000e-3(a); N.Y. Exec. Law § 296(7); N.Y.C. Admin. Code, Title 8, § 8–107(7).

To establish a retaliation claim under Title VII and the NYSHRL, a plaintiff "must show (1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005) (quoting *McMenemy v. City of Rochester*, 241 F.3d 279, 282–83 (2d Cir. 2001)).  "As with discrimination claims, at the motion to dismiss stage, 'the allegations in the complaint need only give plausible support to the reduced prima facie requirements that arise under *McDonnell Douglas* in the initial phase of [a Title VII and NYSHRL] litigation.'"  *McHenry*, 510 F. Supp. 3d at 66

(quoting *Duplan v. City of New York*, 888 F.3d 612, 625 (2d Cir. 2018)).   Therefore, for a retaliation claim to survive a motion to dismiss, "the plaintiff must plausibly allege that: (1) defendants discriminated—or took an adverse employment action—against [her], (2) because [s]he opposed any unlawful employment practice." *Duplan*, 888 F.3d at 625.   "Sexual harassment by an employer or supervisor is an unlawful practice, and an employee's refusal is a means of opposing such unlawful conduct." *Hughes*, 304 F. Supp. 3d at 447–48.[9]

Under the NYCHRL, on the other hand, the plaintiff need only show that "she took an action opposing her employer's discrimination, . . . and that as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action." *Mihalik v. Credit Agricole Cheuvreux North Am., Inc.*, 715 F.3d 102, 112 (2d Cir. 2013); N.Y.C. Admin. Code § 8-107(7).   In construing the NYCHRL retaliation provisions, courts have found that "opposing" an employer's discrimination can include situations where the plaintiff "merely 'made clear her disapproval of [the defendant's] discrimination by communicating to [him], in substance, that she thought his treatment . . . was wrong.'"   *Id.*   (alterations in original) (quoting *Albunio v. City of New York*, 947 N.E.3d 135, 138 (N.Y. 2011)).

### B.   Application

Friederick has stated a claim for retaliation under both Title VII and the NYSHRL.   Plaintiff has adequately alleged that she opposed an unlawful employment practice in at least two ways: (1) she reached out to HR to file formal complaints against Sary, and (2) she rejected Sary's advances on multiple occasions.   Plaintiff has further alleged that Defendants took several adverse

---

[9] While some judges in this District have concluded that "resisting a supervisor's sexual advance, without more, is not enough to state a claim for retaliation," *Williams v. N.Y.C. Dep't of Educ.*, 19-CV-1353 (CM), 2019 WL 4393546, at *12 (S.D.N.Y. Aug. 28, 2019), "the majority of courts" within the Circuit have held otherwise.   *Johnson v. MediSys Health Network*, 10-CV-1596 (ERK) (VVP), 2011 WL 5222917, at *16 (E.D.N.Y. June 1, 2021); *see also Hughes*, 304 F. Supp. 3d at 447.   This Court shares the majority view.   *See Areu v. Fox News Network, LLC*, 20-CV-8678 (RA), 2021 WL 4124226, at *12 (S.D.N.Y. Sept. 9, 2021).

employment actions against her.  It is undisputed that Plaintiff was terminated four days after she contacted HR to file complaints against Sary.  Friederick was informed of her termination via email from Zhou, whom Plaintiff has alleged was Wang's assistant.  Given that relationship, it is reasonable to infer that Zhou sent that email at Wang's request.  Friederick's termination is undoubtedly a form of adverse employment action, and it is reasonable to infer that the temporal proximity between her contacting HR to file complaints and her termination shows a causal relationship between the two.

Even before she was terminated, Friederick was retaliated against after she rejected Sary's advances.  As discussed above, Sary reassigned one of her projects to another teammate because "writing [was] not her job," despite Plaintiff's previous assignments drafting content.  Compl. ¶ 65.  And the day after she refused to skip work to go to a museum with him—on the heels of a host of other rejections—he was unwilling to review her work and "ignored her throughout the day."  *Id.* ¶ 59.  These allegations constitute adverse employment actions because each of them was "harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination."  *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 57 (2006).  A reasonable worker could be dissuaded from speaking up against the discrimination they were experiencing if they thought that their supervisor was going to change their job responsibilities, ignore them, or refuse to review their work as a result.  Finally, it is reasonable to infer from the timeline of events that Sary began treating her negatively because of her explicit rejections of him.

Because Plaintiff has plausibly alleged a retaliation claim under Title VII and the NYSHRL, she has also satisfied the more permissive NYCHRL retaliation standard.  *See Farmer v. Shake Shack Enters., LLC*, 473 F. Supp. 3d 309, 334 (S.D.N.Y. 2020) (holding that because

plaintiff's retaliation claims satisfied the Title VII and NYSHRL standard, they also satisfied the NYCHRL standard).

### C.      Each Defendant's Liability for Retaliation

Having found that Plaintiff has stated a claim for retaliation under the federal, state, and city statutes, the Court now addresses each defendant's liability under the relevant statutes.

#### 1.      Passfeed's Liability for Retaliation

Plaintiff alleges that Passfeed is liable for retaliation under Title VII, the NYSHRL, and the NYCHRL.  The Court agrees that she has stated a claim of retaliation against Passfeed under all three statutes because she has plausibly alleged that it retaliated against her for engaging in protected activity—that is, by reporting harassment to HR—by terminating her shortly thereafter. 42 U.S.C. § 2000e-3(a); N.Y. Exec. Law § 296(7); N.Y.C. Admin. Code, Title 8, § 8–107(7).

#### 2.      Individual Liability under the NYSHRL and the NYCHRL

Plaintiff further alleges that Wang and Sary are each individually liable for retaliation under state and city law.  Both the NYSHRL and the NYCHRL retaliation provisions impose liability on "any person" who retaliates against another.  N.Y. Exec. Law § 296(7); N.Y. Code Title 8, § 8-107(7).  But as discussed above, individual liability under these statutes is limited to cases where "an individual defendant . . . actually participates in the conduct giving rise to the plaintiff's [ ] retaliation claim."  *Malena*, 886 F. Supp. 2d at 366.

##### a.      Sary's Liability for Retaliation

Plaintiff has pleaded sufficient evidence that Sary is directly liable for retaliation under both the NYSHRL and the NYCHRL.  As a supervisor who "actually participate[d]," *Feingold*, 366 F.3d at 157, in retaliating against Plaintiff for objecting to his sexual advances, Sary is liable

under the NYSHRL.  Plaintiff has also plausibly alleged that Sary is directly liable under the NYCHRL, which provides an even broader basis for direct individual liability than the NYSHRL.

### b.    Wang's Liability for Retaliation

While a close question, the Court also finds that Plaintiff has plausibly alleged that Wang is directly liable under the NYSHRL.  She asserts he is an owner of the company who actually participated in retaliating against Friederick by directing Zhou, his assistant, to send Plaintiff the termination notice after the company learned that she was reporting harassment.  *See Malena*, 886 F.2d at 365–66.  Plaintiff's claims against Wang for retaliation under the NYCHRL similarly survive because she has adequately alleged that by instructing Zhou to send Plaintiff the termination notice he actually participated in the conduct giving rise to Friederick's retaliation claim.  *Id.* at 366.  Wang may well prove at a later stage that he did not actually participate in Friederick's termination, but accepting the well pled facts alleged in the complaint as true, Plaintiff's retaliation claims against Wang survive the motion to dismiss.[10]

### CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss is granted in part and denied in part.  Plaintiff states a claim for sexual harassment under Title VII as to Passfeed, under the NYSHRL as to Sary, and under the NYCHRL as to Passfeed and Sary.  Additionally, she states a claim for retaliation under Title VII as to Passfeed, and under the NYSHRL and NYCHRL as to all three defendants.  The Court hereby dismisses the following claims: Plaintiff's NYSHRL sexual harassment claims as to Passfeed; her NYSHRL and NYCHRL sexual harassment claims as to Wang; and her aiding and abetting claims against all defendants.

---

[10] In light of its finding that Plaintiff's retaliation claims against Defendants Sary and Wang survive the motion to dismiss based on a theory of direct liability, the Court need not address whether they would also be liable as aiders and abettors.

Accordingly, Plaintiff's first, second, fourth, and seventh causes of action survive in their entirety.  Plaintiff's third cause of action survives based on sexual harassment as to Sary, but is dismissed to the extent it is based on sexual harassment as to Passfeed and Wang. The sixth cause of action survives based on sexual harassment as to Passfeed and Sary, but is dismissed to the extent it is based on sexual harassment as to Wang.  The fifth and eighth causes of action in her complaint are dismissed entirely.

The Clerk of Court is respectfully directed to terminate the motions pending at Dkts. 10, 11, and 15.[11]

SO ORDERED.

Dated:   March 31, 2022
         New York, New York

_____
Ronnie Abrams
United States District Judge

---

[11] The motions pending at Dockets 10 and 11, Defendants' initial motion to dismiss and supporting brief filed prior to Plaintiff amending her complaint, are deemed moot.